Stephen Kelson, # 8458
   Steve.Kelson@chrisjen.com
Matthew K. Strout, #16732
   Matthew.Strout@chrisjen.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111-2047
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID ZAMORA and GUMECINDO ZAMORA<br><br>    Plaintiffs,<br><br>vs.<br><br>DOUGLAS QUEZADA<br><br>    Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No:<br><br>Judge: |

Plaintiffs, David Zamora and Gumecindo Zamora, by and through their undersigned counsel, hereby submit this Complaint and Jury Demand pursuant to 28 U.S.C. § 1332 and allege as follows:

### PARTIES

1. Plaintiff David Zamora is a citizen of the State of California and resides in Ventura County.

2. Plaintiff Gumecindo Zamora is a citizen of the State of California and resides in Ventura County.

1

3. Defendant Douglas Quezada is a citizen of the State of Utah and resides in Utah County. As set forth herein, Defendant defrauded Plaintiffs out of at least $141,000 in a fraudulent investment scheme.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiffs are citizens of California, whereas Defendant is a citizen of Utah.

5. This Court has personal jurisdiction over Defendant because he is a citizen of the State of Utah.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## GENERAL ALLEGATIONS

7. In or around November 2017, Defendant approached Plaintiff David Zamora about an "investment opportunity" in a company called Aurora Cannabis ("Aurora"). Defendant told David that he expected the stock price of Aurora to increase dramatically, and that David would profit handsomely if he invested. In fact, Defendant claimed that the market was so favorable that he was going to personally purchase shares in Aurora, and he urged David to take advantage of the opportunity as well.

8. Defendant, knowing that David knew little about investing, offered to purchase shares in Aurora for David and to manage an investment portfolio for him. All David had to do was transfer money to Defendant, and he would take care of the rest.

9. Defendant also asked David to relay Defendant's offer to David's father, Gumecindo Zamora. David did so.

10. David and Gumecindo trusted Defendant because they knew each other well and had been friends for approximately seventeen years. In fact, Defendant was David's and Gumecindo's bishop at the church they belonged to in California. In addition, Defendant portrayed himself as a savvy investor, and he claimed that he was making and managing investments for other individuals.

11. On November 29, 2017, Gumecindo paid Defendant $18,000 via bank transfer for the purchase and management of shares in Aurora. Gumecindo did so in reasonable reliance on Defendant's representations, as set forth above.

12. Defendant did not provide David or Gumecindo with any stock certificates, investment statements, or other documentation evidencing the purchase or performance of the stocks. Thus, in early 2018, David asked Defendant about the status of the investment. Defendant assured David that he had, in fact, invested the money on behalf of David and Gumecindo and was managing their investment. Defendant also stated that the stocks were a "long term investment" and that David and Gumecindo would not receive any dividends or other returns, and could not sell the shares, for two years.

13. Over the next three years, Defendant contacted David and Gumecindo at least eleven times to solicit funds from them for the purchase of additional shares in Aurora.

14. During each conversation, Defendant represented that the stocks were performing so well that Defendant was going to purchase additional shares for himself, and he invited David and Gumecindo to invest more through him. Like the initial investment, Defendant promised that

3

he would purchase shares on behalf of David and Gumecindo and manage their investment portfolio. Defendant also reiterated in each conversation that David and Gumecindo "could not touch the money" for at least two years.

15. During at least one conversation, Defendant told David that if he and Gumecindo invested additional funds, Defendant would secure and insure their investment with gold from a Chilean mine that Defendant had an ownership interest in. Defendant explained that he did this as a courtesy to all of his high value clients.

16. Between February 2018 and January 2021, David and Gumecindo paid Defendant $123,000 to invest in Aurora. That sum was paid in eleven installments ranging from $3,000 to $15,000 each. Including the initial $18,000 payment and all subsequent payments, David and Gumecindo paid Defendant at least $141,000 for investment purposes. The majority of the funds came from a bank account jointly held by David and Gumecindo. The remainder of the funds originated from an account held by Gumecindo.

17. David and Gumecindo made each payment in reasonable reliance on Defendant's representations as set forth herein.

18. Over the above-referenced three-year period, David and Gumecindo asked Defendant about the performance of their investment on ten or more occasions. Each time, Defendant claimed that their investment was doing well. From time to time, Defendant represented that their investment portfolio had increased in value by a specific amount. For example, on one occasion, Defendant claimed that the portfolio gained $10,000 in capital appreciation.

19. All of Defendant's representations were false. Defendant never invested the money on behalf of David and Gumecindo. Defendant misappropriated the funds for his own enrichment at their expense.

20. David and Gumecindo discovered that they had been defrauded in August 2021. During a phone call that month, Gumecindo mentioned to Defendant's brother, Diego, that he had invested money in Aurora through Defendant. Diego told Gumecindo that "you shouldn't have done that" and that Defendant "is robbing you."

21. After that conversation, Gumecindo asked Defendant to return the money he and David had paid for the non-existent stocks.

22. Defendant initially agreed to return $80,000 immediately and to return the remainder over time. However, during a subsequent conversation, Defendant falsely denied that David and Gumecindo provided him with $141,000 to invest. Defendant claimed that they provided only $20,000, notwithstanding the bank records and cashier's check receipts that prove that claim to be false.

23. Defendant never returned any of the money. Nor did Defendant provide David and Gumecindo with any stock certificates, investment statements, or other documents showing that he purchased any shares in Aurora for them.

24. In addition, Defendant is in possession of papers belonging to Gumecindo pertaining to two parcels of real property that Gumecindo owns. Defendant has failed to return the papers despite multiple requests from Gumecindo.

25. Defendant's misconduct constitutes common law fraud, securities fraud, conversion, and unjust enrichment. David and Gumecindo have suffered damages as a direct and

proximate result of Defendant's unlawful and egregious misconduct, and they seek actual, consequential, and incidental damages; statutory treble damages; punitive damages; statutory attorneys' fees and costs; pre-judgment interest, post-judgment interest, and/or statutory interest; the return of the property papers in Defendant's possession; and all other relief this Court deems just and proper.

## FIRST CAUSE OF ACTION
**(Fraud)**

26. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

27. As described above, Defendant fraudulently induced David and Gumecindo to pay at least $141,000 to Defendant under the guise of an investment opportunity.

28. Defendant made numerous fraudulent misrepresentations to David and Gumecindo including, but not limited to, the following:

 a. That Defendant would purchase stocks in Aurora on behalf of David and Gumecindo and manage an investment portfolio for them;

 b. That Defendant had, in fact, purchased the stocks and was managing the portfolio;

 c. That the investment portfolio was doing well and gaining value;

 d. That the stocks were a "long term investment," and that David and Gumecindo would not receive any returns, and could not sell their shares, for at least two years;

 e. And that David and Gumecindo's investment was safe and would not lose value because Defendant would secure and insure it with gold from a Chilean mine that Defendant had an ownership interest in.

6

29. The foregoing were false statements of presently existing material facts. Defendant did not invest any of the money in Aurora (or in any other company) on behalf of David and Gumecindo, nor did he ever intend to. As a corollary, Defendant did not manage the non-existent stocks or secure them with gold, and his representations about the performance of the non-existent stocks were fabricated. In addition, upon information and belief, Defendant did not own an interest in any gold mine.

30. For the same reasons, Defendant knew that his statements were false.

31. Defendant made the false statements for the purpose of inducing David and Gumecindo to transfer money to him, and to continue doing so after the initial payment. Defendant knew that David and Gumecindo would not gratuitously provide him with a large sum of money for his personal benefit. Defendant also knew that David and Gumecindo were not sophisticated investors. Defendant therefore created the ruse of an investment opportunity to separate David and Gumecindo from their hard-earned money.

32. Defendant falsely represented that he was managing the non-existent investment portfolio, which he claimed was appreciating in value, to give David and Gumecindo a false sense of security that Defendant was acting on their behalf and protecting their interests. Defendant also made that misrepresentation to dissuade David and Gumecindo from asking for documentation about the purchase and performance of the stocks, to prevent them from discovering that Defendant had misappropriated the funds, and to induce them to "invest" more money.

33. After Gumecindo made the initial payment to Defendant, Defendant repeatedly told David and Gumecindo that the stocks had a two-year restriction. Defendant made that misrepresentation to further conceal his fraudulent scheme and to keep the cash from David and

Gumecindo flowing. For the same reason, Defendant also falsely represented that the stocks would be secured by gold and were therefore risk free.

34.     David and Gumecindo reasonably relied on the misrepresentations that Defendant made before and after Gumecindo made the initial payment. They had been friends for seventeen years, Defendant was their bishop when Defendant resided in California, and Defendant portrayed himself as a savvy investor who would protect the interests of David and Gumecindo, who were not experienced investors. In addition, Defendant told David and Gumecindo that he was making and managing investments for other individuals, and that the market was so favorable that he was also investing his own money in Aurora. This created the façade of a legitimate investment opportunity, and David and Gumecindo had no reason to believe that Defendant, who was their friend and former church leader, would defraud them.

35.     In short, David and Gumecindo trusted Defendant, and Defendant abused that trust for his own enrichment.

36.     David and Gumecindo have suffered damages as a direct and proximate result of Defendant's fraudulent misrepresentations. David and Gumecindo seek actual, consequential, and incidental damages in an amount to be proven at trial but no less than $141,000, as well as pre-judgment interest, post-judgment interest, and all other relief the Court deems just and proper.

37.     In addition, David and Gumecindo are entitled to an award of punitive damages because Defendant engaged in willful, malicious, and intentionally fraudulent misconduct as set forth above.

## SECOND CAUSE OF ACTION
(Securities Fraud Pursuant to Utah Code §§ 61-1-22(1)(a), 61-1-1(2), and 61-1-3(1))

38.     Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

39. Pursuant to Utah Code § 61-1-1(2), "It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to: . . . make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

40. Utah Code § 61-1-22(1)(a)(ii) creates a private right of action for violation of § 61-1-1(2).

41. As described above, Defendant made false statements of material fact to David and Gumecindo in connection with Defendant's multiple offers to purchase shares in Aurora, and to manage an investment portfolio, on their behalf. In addition, Defendant failed to disclose: (a) that he did not actually intend to purchase the shares, secure or insure them with gold, or manage an investment portfolio for David and Gumecindo; (b) that he did not have access to any gold that could secure any investment; (c) that he did not purchase the shares as promised; and (d) that the investment portfolio had not increased in value because it did not exist, among other things.

42. Utah Code § 61-1-3(1) provides that it is "unlawful for a person to transact business in this state as a broker-dealer or agent unless the person is licensed under this chapter." A private right of action is available for violation of that subsection pursuant to Utah Code § 61-1-22(1)(a)(i)(A).

43. Defendant transacted business as a broker-dealer or agent because he: (1) offered to purchase shares in Aurora on behalf of David and Gumecindo; (2) offered to manage the investment on their behalf; (3) made representations to David and Gumecindo about the expected and "actual" performance of the stocks; and (4) accepted money from David and Gumecindo for the foregoing purposes.

44. Upon information and belief, Defendant is not licensed as a securities broker-dealer or agent.

45. David and Gumecindo have suffered damages as a direct and proximate result of Defendant's statutory violations. Pursuant to Utah Code §§ 61-1-22(1)(b) and 61-1-22(2), David and Gumecindo are entitled to recover the money that Defendant misappropriated, interest at the rate of 12 percent per annum, and attorneys' fees and costs. They are also entitled to recover treble damages under the above-referenced statute because Defendant's statutory violations were reckless or intentional.

## THIRD CAUSE OF ACTION
**(Conversion of Funds)**

47. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

48. Defendant is liable for conversion of the $141,000 belonging to David and Gumecindo.

49. David and Gumecindo were entitled to immediate possession of the funds at the time of the conversion because the funds belonged to them.

50. Defendant willfully interfered with those funds without lawful justification because he misappropriated them. Specifically, the funds were provided to Defendant for the sole purpose of investing them in Aurora. Defendant did not use the funds for that purpose. Instead, Defendant retained and used the money for his own benefit at the expense of David and Gumecindo without their knowledge or consent.

51. Defendant has refused to return the misappropriated funds to David and Gumecindo.

52. Due to Defendant's conversion of the funds and his refusal to return them, David and Gumecindo have been deprived of the use and possession of their funds.

53. David and Gumecindo have suffered damages as a direct and proximate result of Defendant's conversion, and they seek actual, consequential, and incidental damages including, but not necessarily limited to, an award of at least $141,000, prejudgment and post-judgment interest, court costs, and all other relief the Court deems just and proper.

54. David and Gumecindo are also entitled to an award of punitive damages because Defendant engaged in willful, malicious, and intentionally fraudulent misconduct as set forth in this Complaint.

## FOURTH CAUSE OF ACTION
### (Conversion of Property Papers)

55. In October 2018, Defendant offered to safekeep the deeds, real estate purchase contracts, tax documents, and other documents pertaining to two parcels of real property owned by Gumecindo ("Property Papers"). Gumecindo agreed upon the condition that Defendant would return the papers upon request. Defendant agreed to that condition.

56. Defendant does not have any ownership interest in the properties, and the above-referenced agreement was his sole source of authority to possess the Property Papers.

57. Gumecindo, by and through his undersigned counsel, requested the return of the Property Papers on April 5, 2022, May 10, 2022, May 23, 2022, June 1, 2022, July 11, 2022, and July 25, 2022.

58. Defendant provided an electronic copy of the Property Papers, but he willfully failed to return the hard copies as requested.

59. Gumecindo was entitled to immediate possession of the Property Papers on the date he requested the return of the Papers. Defendant willfully interfered with the Papers without lawful justification because he willfully failed to return them despite multiple requests. This has deprived Gumecindo of the use and possession of the Papers.

60. Gumecindo has suffered damages as a direct and proximate result of Defendant's conversion, and he seeks the return of the original Property Papers and all hard copies in Defendant's possession, custody, or control. Gumecindo also seeks a Court order requiring Defendant to delete all electronic copies of the Property Papers that are in Defendant's possession, custody, or control. In addition, Gumecindo seeks court costs and all other relief the Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**(Unjust Enrichment/Quantum meruit)**

61. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

62. Defendant received a benefit from David and Gumecindo, to wit: $141,000 and the Property Papers. Defendant knew that he received those funds, and he knew that David and Gumecindo paid him those funds to invest in Aurora. Defendant also knew he received the Property Papers.

63. Defendant received and retained the funds under unjust circumstances. That is, Defendant's receipt and retention of the funds was the product of his fraudulent misrepresentations. As explained herein, Defendant induced David and Gumecindo to pay him the funds by promising that he would invest them in Aurora, that the investment would be secured by gold, and that he would manage the investment, among other things. Defendant did not invest the

funds, but rather misappropriated them for his own enrichment at the expense of David and Gumecindo.

64. Defendant also retained the Property Papers under unjust circumstances. Defendant's sole source of authority to possess the Papers was Gumecindo's revokable consent. Gumecindo requested the return of the Papers, but Defendant has willfully failed to return the physical documents.

65. Defendant has been unjustly enriched, and David and Gumecindo are entitled to restitution; disgorgement of any other ill-gotten gains that Defendant received in connection with his unlawful conduct; the return of the original Property Papers and all hard copies in Defendant's possession, custody, or control; a Court order requiring Defendant to delete all electronic copies of the Property Papers that are in Defendant's possession, custody, or control; pre-judgement interest and post-judgment interest; court costs; and all other relief the Court deems just and proper.

66. In addition, David and Gumecindo are entitled to an award of punitive damages because Defendant engaged in willful, malicious, and intentionally fraudulent misconduct as set forth in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendant:

1. Judgment against Defendant for fraud, securities fraud, conversion, and unjust enrichment.

2. An award of actual, incidental, and consequential damages and/or restitution.

3. An award of statutory treble damages.

4. An award of punitive damages.

5.	Statutory interest on the funds that Defendant fraudulently obtained from David and Gumecindo at the rate of 12 percent per annum and/or prejudgment and post-judgment interest.

6.	Statutory attorneys' fees and costs.

7.	A Court order requiring Defendant to return the original Property Papers and all hard copies in Defendant's possession, custody, or control.

8.	A Court order requiring Defendant to delete all electronic copies of the Property Papers that are in Defendant's possession, custody, or control.

9.	All other and further relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

DATED: September 21, 2022

CHRISTENSEN & JENSEN, P.C.

/s/ Matthew K. Strout
Stephen Kelson
Matthew K. Strout
*Attorneys for Plaintiff*