THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DAVID ZAMORA and GUMECINDO ZAMORA,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS QUEZADA, LAUREN QUEZADA, and HQC, LLC,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [41] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:22-cv-00616-DBB<br><br>District Judge David Barlow |

Before the court is Defendants Douglas Quezada, Lauren Quezada, and HQC, LLC's (collectively "Defendants") motion to dismiss, which seeks dismissal of Plaintiffs David Zamora and Gumecindo Zamora's (collectively "Plaintiffs" or the "Zamoras") claims for fraud, securities fraud, conversion, unjust enrichment, and civil conspiracy.[1] For the following reasons, the court denies Defendants' motion.

## BACKGROUND[2]

The parties in this case have known one another and have been friends for approximately 17 years.[3] In November 2017, Mr. Quezada informed David about an investment opportunity in Aurora Cannabis ("Aurora") and offered to purchase shares and manage an investment portfolio for him.[4] Mr. Quezada told David that the price of Aurora stock was expected to rise

---

[1] Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 41.
[2] For purposes of this motion, the well-pleaded factual allegations, together with the reasonable inferences therefrom, are treated as true.
[3] Am. Compl. ¶ 12, ECF No. 32.
[4] Am. Compl. ¶¶ 9–10.

1

dramatically and stated that he was going to invest in the stock as well.[5] Mr. Quezada asked David to relay the offer to his father, Gumecindo.[6] Mr. Quezada portrayed himself as a savvy investor, and claimed to have experience managing investments for others.[7]

On December 1, 2017, David took Mr. Quezada up on the offer and provided him with a $4,000 Cashier's Check.[8] However, Mr. Quezada did not provide David with any documentation evidencing the purchase or performance of the stock, but when David asked Mr. Quezada about the investment, he represented that the investment had been made.[9] At this point, Mr. Quezada also informed David that he would not receive any dividends or other returns and could not sell the shares for two years.[10] From 2018 to 2021, Mr. Quezada contacted the Zamoras at least 11 times to solicit them to purchase additional shares through him.[11] In at least one conversation, Mr. Quezada represented that if David and Gumecindo invested additional money through him, he would secure their investment with gold from a Chilean mine that he had an ownership interest in.[12] During this period, the Zamoras gave Mr. Quezada an additional $132,800, over the course of twelve transactions.[13] They repeatedly queried Mr. Quezada about the performance of their stock, and he continuously assured them it was doing well; on one occasion, he claimed the investment had gained over $10,000.[14]

---

[5] *Id.* ¶ 9.
[6] *Id.* ¶ 11.
[7] *Id.* ¶ 12.
[8] *Id.* ¶ 13.
[9] *Id.* ¶ 14.
[10] *Id.*
[11] *Id.* ¶ 15; *see also id.* ¶ 16.
[12] *Id.* ¶ 17.
[13] *Id.* ¶ 18.
[14] *Id.* ¶ 20.

However, Mr. Quezada never invested any money on behalf of the Zamoras in Aurora; instead, he deposited their funds in an account belonging to Defendant HQC, which is an entity controlled by him and his wife.[15] Around August 2021, Gumecindo became suspicious, and asked Mr. Quezada to return the money.[16] He initially agreed, but did not in fact return any of the money.[17] The Amended Complaint alleges that the Quezadas have used the funds for personal or other business purposes.[18]

On September 28, 2023, the Zamoras filed their Amended Complaint, alleging fraud against Mr. Quezada, securities fraud under Utah law against Mr. Quezada, conversion against all Defendants, unjust enrichment against all Defendants, and civil conspiracy against Mr. Quezada and Ms. Quezada.[19] Mr. Quezada answered,[20] and Defendants then moved to dismiss each of these claims under Federal Rule of Civil Procedure 12(b)(6).[21] This motion was fully briefed on April 1, 2024.[22]

## STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[15] *Id.* ¶ 21.
[16] *Id.* ¶¶ 22–23.
[17] *Id.* ¶¶ 24–25.
[18] *Id.* ¶ 21.
[19] *Id.* ¶¶ 27–69.
[20] Answer to First Am. Compl., ECF No. 35.
[21] Defs.' Mot. Defendants also suggest that their motion was brought under Rule 12(c), *see id.* at 3–4, which permits a motion for judgment on the pleadings. However, Defendants make arguments sounding only in Rule 12(b)(6). Nowhere do they suggest that "no material issue of fact remains to be resolved and" that they are "entitled to judgment as a matter of law." *See Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by* 545 Fed.Appx. 750, 753 (10th Cir. 2013)).
[22] Pls.' Opp'n to Mot. to Dismiss ("Pls.' Mot."), ECF No. 46; Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply"), ECF No. 47.

face.'"[23] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] The court does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[25]

In addition, under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[26] Rule 9(b) applies to all claims that are "based on the same core allegations of deception, false misrepresentations, and fraudulent conduct."[27] To satisfy Rule 9(b)'s heightened pleading standard, among other things, a pleading must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[28] However, a pleading may

---

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[24] *Id.* Defendants suggest that the factual allegations of the Amended Complaint are implausible, because, as they put it, "[i]t is implausible that anyone would conduct their personal affairs" in the manner alleged in the Amended Complaint. *See* Defs.' Mot. 2, 5–6; *see also id.* 11. Likewise, they repeatedly argue that Plaintiffs bring this case "as revenge against the Defendants for allowing plaintiff David to live with them rent-free over a period of several years, until he stole a firearm from them" and was convicted of a crime. Defs.' Mot. 2; *see also id.* 5, 11. However, Defendants mistake the plausibility standard set forth in *Twombly* and *Iqbal*. The first tenant of those decisions is that "a court must accept as true all of the [factual] allegations contained in a complaint[.]" *Iqbal*, 556 U.S. at 678. After accepting well-pleaded factual assertions as true, the court then determines "whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In other words, the question here is not whether it is plausible that someone would give a friend $136,800 dollars without documentary evidence; it is whether, *assuming that is true*, the allegations of the Amended Complaint plausibly give rise to an entitlement to relief. Likewise, it would be improper to examine Plaintiffs' motives for bringing this case. For this reason, the court need not address Defendants' request for judicial notice, *see* ECF No. 42, as such a request is pertinent only to cast doubt on the plausibility of the well-pleaded facts alleged in Plaintiffs' Amended Complaint. In this case, the documents that Defendants ask the court to judicially notice would not impact the evaluation of their motion to dismiss.
[25] *Iqbal*, 556 U.S. at 678.
[26] Fed. R. Civ. P. 9(b).
[27] *Security Sys., Inc. v. Alder Holdings, LLC*, 421 F.Supp.3d 1186, 1194 (D. Utah 2019); *see also Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) ("By its terms, Rule 9(b) applies to 'all averments of fraud.' This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.").
[28] *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 12152 (10th Cir. 1997) (quoting *Lawrence Nat'l Bank v. Edmonds (In re Edmonds)*, 924 F.2d 176, 180 (10th Cir. 1991)).

state a claim under Rule 9(b) if some allegations are stated generally, but the allegations taken as a whole are sufficiently particularized.[29]

## DISCUSSION

### I. Utah's Economic Loss Rule

Defendants suggest that Plaintiffs' tort claims are barred by the economic loss rule.[30] Utah's economic loss rule "prevents recovery of economic damages under a theory of . . . tort when a contract covers the subject matter of the dispute" and makes "the contract . . . the exclusive means of obtaining economic recovery."[31] However, "[w]hether the economic loss rule applies depends on 'whether a duty exists independent of any contractual obligations between the parties.'"[32] "When an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'"[33]

Although Plaintiffs have not alleged the existence of a contract or any breach of that contract, Defendants suggest that the allegations of the Amended Complaint establish the existence of a valid contract.[34] The allegations of the Amended Complaint could be read to

---

[29] *Clinton v. Security Benefit Life Ins. Co.*, 63 F.4th 1264, 1280 (10th Cir. 2023).
[30] Defs.' Mot. 7–8, 9. Defendants argue that "[t]his is really a breach of contract case, albeit one that cannot proceed." *Id.* at 6; *see also id.* 13–14. They suggest that there are three reasons why Plaintiffs did not allege a breach of contract claim: the statute of frauds, the economic loss rule, and low damages. *Id.* at 6–7. Why Plaintiffs did not bring a breach of contract claim is irrelevant to the court's analysis. As Plaintiffs did not allege a breach of contract claim, the court need not engage with whether the Amended Complaint alleges each element of such a claim, or whether such a claim would in fact be barred, as Defendants suggest. *Cf. id.* 6–9.
[31] *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168, 1176.
[32] *Id.* at ¶ 21 (quoting *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235).
[33] *Hermansen*, 2002 UT 52, ¶ 17 (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256 (Colo. 2000)).
[34] *See* Defs.' Mot. 6. Notably, in the same breath, Defendants suggest that the contract was void under the statute of frauds, *see id.* at 7, which would negate any theory that a contractual remedy superseded a tort remedy, as required by the economic loss rule.

suggest the existence of an oral contract,[35] therefore, the court will assume for the purposes of this decision that such a contract existed, at least at the beginning of the parties' relationship. But the terms of the purported contract alleged in the Amended Complaint are sparse: the Zamoras were to give Mr. Quezada money, Mr. Quezada was to purchase shares of Aurora on their behalf, and Mr. Quezada was to insure their investment with gold.[36] In their motion, Defendants do not identify any overlap between the duties owed under the parties' purported contract and the duties owed under any of the tort claims alleged by Plaintiffs.[37] Therefore, the court declines to address this issue here, as it was inadequately briefed.[38]

## II. Fraud

The elements of fraud under Utah law are:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[39]

The Amended Complaint alleges the following false representations: (1) that Mr. Quezada "would purchase stocks in Aurora" on Plaintiffs' behalf; (2) that Mr. Quezada "had, in fact, purchased the stocks and was managing the portfolio"; (3) that "the investment portfolio

---

[35] *See* Am. Compl. ¶¶ 9–20.
[36] *See id.*
[37] *Cf.* Defs.' Mot. 8. On reply, Defendants make a better argument. *See* Defs.' Reply 4. However, the court does not consider arguments raised for the first time on reply. *E.g.*, *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019); *Deseret Tr. Co. v. Unique Inv. Corp.*, No. 2:17-cv-00569, 2018 WL 8110959, at *3 (D. Utah July 3, 2018) (compiling cases).
[38] *E.g.*, *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019); *Addiction Treatment Ctrs., Inc. v. Shadow Mountain, LLC*, No. 2:16-cv-00339, 2020 WL 2543238, at *9 (D. Utah May 19, 2020).
[39] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (quoting *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996)); *accord State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66.

was doing well and gaining value"; (4) that "the stocks were a 'long term investment,' and that Plaintiffs "would not receive any returns, and could not sell their shares, for at least two years"; and (5) that Plaintiff's "investment was safe and would not lose value because [Mr. Quezada] would secure and insure it with gold[.]"[40] Defendants challenge only the sixth and ninth elements.[41]

First, Defendants argue that Plaintiffs have not alleged the reasonable reliance element.[42] Specifically, Defendants contend that it was unreasonable to provide a purported friend with $136,800 without documenting the transactions,[43] and without independently investigating stock prices.[44] These arguments misconstrue the reasonable reliance element. Reliance is unreasonable when a party learns or should learn of information that suggests a representation is inaccurate.[45] Whether or not Plaintiffs documented the transactions does not speak to whether their *reliance* on Mr. Quezada's statements was reasonable. Put another way, while it may be that failing to document large financial transactions is imprudent and fiscally irresponsible, it has nothing to do with whether trusting the word of another person was reasonable.

Likewise, Defendants' argument regarding Plaintiffs' supposed failure to conduct an independent investigation of the stock market is inapposite. Defendants point to *McBroom v.*

---

[40] Am. Compl. ¶ 29.
[41] *See* Defs.' Mot. 9–11.
[42] Defs.' Mot. 9–11.
[43] Defs.' Mot. 10–11.
[44] Defs.' Reply 6.
[45] *Armed Forces*, 2003 UT 14, ¶ 34; *accord, e.g.*, *Donner v. Nicklaus*, 778 F.3d 857, 870 (10th Cir. 2015) ("In Utah, plaintiffs may accept representations without investigation unless '"facts should make it apparent . . . that [they are] being deceived."'" (quoting *Robinson v. Tripco Inv., Inc.*, 21 P.3d 219, 225 (Utah Ct. App. 2000) (alterations in original)); *Gold Standard*, 915 P.2d at 1067–68 (holding reliance on a promise was unreasonable where follow-up communications contradicted the plaintiff's understanding of the situation).

*Child*[46] for support.[47] There, the Utah Supreme Court held that reliance on oral representations was unreasonable when they were contradicted by the express terms of a contract.[48] While in *McBroom*, pre-existing Utah caselaw adopted a presumption that a signatory to a contract had read the contract and understood it,[49] Defendants point to no authority suggesting that investors must conduct an independent investigation of the stock market. Absent such independent duties, *McBroom* is of no aid to Defendants.

Here, the Amended Complaint alleges a close and lengthy personal relationship between the Zamoras and Mr. Quezada.[50] And it alleges that Mr. Quezada repeatedly assured the Zamoras that their investment had been made and was performing well.[51] There is nothing in the Amended Complaint that suggests the Zamoras learned or should have learned of information that would render their reliance on any of Mr. Quezada's alleged misrepresentations unreasonable. Accordingly, the Amended Complaint adequately alleges the reasonable reliance element.

Second, Defendants argue that Plaintiffs have failed to allege the circumstances of fraud under Rule 9(b).[52] Specifically, Defendants take issue with the allegation that $8,000 of the $136,800 was provided in cash: "Plaintiffs provide no details concerning the provision of this cash, such as the date or approximate date, the manner it was delivered, or who delivered it."[53] Defendants point to no authority that suggests that the time, place, and manner of the

---

[46] 2016 UT 38, 392 P.3d 835.
[47] Defs.' Reply 6.
[48] 2016 UT 38, ¶¶ 20–24.
[49] *See id.* ¶ 22 (citing *Res. Mgmt. Co. v. Weston Ranch & Livestock Co.*, 706 P.2d 1028, 1047 (Utah 1985).
[50] Am. Compl. ¶ 12.
[51] *Id.* ¶¶ 14, 16.
[52] Defs.' Mot. 11–12.
[53] *Id.* at 12.

8

consequences of fraud must be plead with particularity. Instead, the Tenth Circuit has held that in order to plead fraud with particularity, a complaint must "set forth the time, place[,] and contents of the false representation, the identity of the party making the false statement[,] and the consequences thereof."[54] Thus, the consequences of fraud are an element of alleging fraud with particularity, but the consequences need not themselves be alleged with particularity.

In sum, Plaintiffs have stated a claim for fraud with sufficient particularity to survive Rule 9(b). Defendants' arguments to the contrary are either inapposite or without merit.

### III. Securities Fraud

Utah Code § 61-1-22 provides that that a person who offers or sells a security in violation of the statute's substantive provisions "is liable to" the person to whom he sells such a security.[55] The two substantive provisions cited by Plaintiffs in their complaint relate to fraud in the offer, sale, or purchase of a security,[56] and offering or selling a security as a broker-dealer or agent without a license.[57]

First, Defendants argue that "Plaintiffs do not allege that they purchased securities from Mr. Quezada . . . . Instead, they allege that Mr. Quezada was to purchase securities from third parties on their behalf."[58] The statute defines "sell" to include "a contract for sale of, contract to sell, or disposition of, a security or interest in a security for value."[59] "Offer" is defined as "solicitation of an offer to buy[] a security or interest in a security for value."[60] The plain text of

---

[54] *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d at 180).
[55] Utah Code § 61-1-22(1)(b).
[56] *Id.* § 61-1-1(2).
[57] *Id.* § 61-1-3(1).
[58] Defs.' Mot. 12.
[59] Utah Code § 61-1-13(bb)(i).
[60] *Id.* § 61-1-13(bb)(ii).

9

these provisions covers the conduct complained of here. In addition, one of the substantive prohibitions cross-referenced in Section 61-1-22 addresses unlicensed broker-dealers or agents.[61] And "broker-dealer" means "a person engaged in the business of effecting transactions in securities for the account of others or for the person's own account."[62] Thus, a person would have a civil remedy against a broker-dealer—i.e. a person who executes the purchase of securities on behalf of others—who offered or sold a security without a license. This in turn suggests that broker-dealers and similar persons "offer" or "sell" securities within the meaning of the statute. Accordingly, Defendants' argument is without merit.

Next, Defendants argue that because the Amended Complaint alleges that Mr. Quezada did not in fact buy the securities, this claim must be dismissed.[63] But the definition of "sell" does not require that a broker-dealer actually purchase securities; instead, it "includes a contract for sale of, contract to sell, or disposition of, a security interest in a security for value."[64] Thus, the plain text of the statute encompasses situations where a seller of a security promises to provide a security for value, but in fact does not give the buyer the security.

Accordingly, Defendants' arguments are without merit. Plaintiffs have stated a claim for securities fraud under Utah law.

### IV. Conversion

The elements of conversion under Utah law are: "'[1] an act of willful interference with property, [2] done without lawful justification, [3] by which the person entitled to property is deprived of its use and possession,' and [4] that the party 'is entitled to immediate possession of

---

[61] *Id.* § 61-1-3.
[62] *Id.* § 61-1-13(c)(i).
[63] Defs.' Mot. 13.
[64] Utah Code § 61-1-13(bb)(i).

the property at the time of the alleged conversion.'"[65] "Money may be the subject of conversion when the party charged wrongfully received it."[66]

Defendants argue that in order to state a conversion claim, Plaintiffs must allege that they provided funds to Mr. Quezada for a definite purpose.[67] Defendants rely on a misquoted portion of *State v. Twitchell*[68] in making this argument. There, Twitchell owned an insurance brokerage business; clients would pay him insurance premiums and he was to provide them insurance coverage from licensed providers.[69] "However, rather than securing the promised insurance, Twitchell kept the premiums[.]"[70] He pled guilty to theft by deception, among other charges.[71] Utah sought to recover restitution for victims, which required pecuniary damages; Utah argued that victims had suffered pecuniary damages because their money had been converted.[72] The Utah Court of Appeals observed that money may be converted, and parenthetically quoting a Missouri Court of Appeals decision, wrote: *"[W]hile ordinarily money represented by a general debt cannot be the subject of conversion*, an exception is recognized for misappropriated funds placed in the custody of another for a definite application."[73] Defendants ignore the italicized portion of the quote in making their argument. This case does not involve a creditor-debtor

---

[65] *Rand v. KOA Campgrounds*, 2014 UT App 246, ¶ 11, 338 P.3d 222 (quoting *Jones & Trevor Mktg., Inc. v. Lowry*, 2010 UT App 113, ¶ 15 n.13, 233 P.3d 538).
[66] *State v. Twitchell*, 832 P.2d 866, 870 (Utah Ct. App. 1992) (citing *Public Util. Dist. No. One v. Wash. Pub. Power Supply Sys.*, 705 P.2d 1195, 1211 (Wash. 1985), *modified*, 713 P.2d 1109 (Wash. 1986)); *accord Jones v. Salt Lake City Corp.*, 2003 UT App 355, ¶ 10 n.4, 78 P.3d 988.
[67] Defs.' Mot. 13–14.
[68] 832 P.2d 866.
[69] *Id.* at 867.
[70] *Id.*
[71] *Id.*
[72] *Id.* at 868, 869.
[73] *Id.* at 870 (emphasis added) (quoting *Boyd v. Wilmes*, 664 S.W.2d 596, 599 (Mo. Ct. App. 1984)).

relationship, and as such, there is no absolute requirement that money can only be converted if it was given to another for a definite application.

In any event, the Amended Complaint *does* allege that Plaintiffs provided Mr. Quezada the $136,800 for a single purpose: to purchase Aurora stocks.[74] It then alleges that instead of purchasing stock, Mr. Quezada funneled the money to HQC, and from there, Mr. Quezada and Ms. Quezada used the money for their own purposes.[75] These allegations are sufficient to establish all four elements of conversion. In addition, the facts alleged in the Amended Complaint resemble *Twitchell*, and there, the Utah Court of Appeals held that the facts were sufficient to establish conversion.[76] Accordingly, Plaintiffs have stated a claim for conversion.

### V. Unjust Enrichment

"A claim for unjust enrichment is an action brought in restitution, and a prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."[77] "An unjust enrichment claim has three elements: '(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value.'"[78]

---

[74] Contrary to Defendants' argument, this does not mean that the conversion claim is "in fact, a breach of contract claim dressed up as a conversion claim." *Cf.* Defs.' Mot. 13. Assuming the existence of a contract, the contract was simply an exchange of money for stock. Plaintiffs' conversion claim is premised on the misappropriation of funds by both Mr. Quezada and Ms. Quezada. *See* Am. Compl. ¶¶ 51–52. For starters, Ms. Quezada was not a party to any contract. Next, nothing in the Amended Complaint suggests that the purported contract had a term related to misappropriating funds.
[75] Am. Compl. ¶ 21.
[76] *Twitchell*, 832 P.2d at 870.
[77] *Ashby v. Ashby*, 2010 UT 7, ¶ 14, 227 P.3d 246.
[78] *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279 (quoting *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d 754).

Defendants simply argue that "Plaintiffs have alleged no facts, outside a breach of contract, that give rise to a plausible unjust enrichment claim."[79] Defendants do not explain their argument beyond this conclusory statement. Again, Defendants have failed to adequately brief the issue,[80] and thus, the court finds their argument to lack merit. However, the court notes that on reply, Defendants argue that the statute of frauds bars this claim.[81] This argument is a nonstarter, as the statute of frauds would render any purported contract unenforceable, paving the way for a remedy in unjust enrichment. Plaintiffs have stated a claim for unjust enrichment.

### VI. Civil Conspiracy

Under Utah law, the elements of civil conspiracy are: "'(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'"[82]

Defendants argue that Plaintiffs' civil conspiracy claim should be dismissed because Plaintiffs have not stated any of their other claims, and civil conspiracy requires an underlying tortious act.[83] The court has not dismissed Plaintiffs' other tort claims; therefore, this argument fails.

Next, Defendants argue that "Plaintiffs' civil conspiracy rests on general allegations that Ms. Quezada committed multiple acts in furtherance of" the alleged conspiracy.[84] The Amended Complaint alleges a "conspiracy to defraud" the Zamoras.[85] The weight of authority suggests

---

[79] Defs.' Mot. 14.
[80] *See* cases cited *supra* note 38.
[81] Defs.' Mot. 7–9.
[82] *Pyper v. Reil*, 2018 UT App 200, ¶ 16, 437 P.3d 493 (quoting *Pohl, Inc. v. Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944).
[83] Defs.' Mot. 15.
[84] *Id.*
[85] Am. Compl. ¶ 65.

that a claim for civil conspiracy based on fraud must satisfy the heightened pleading standard of Rule 9(b).[86] Assuming that Rule 9(b) applies to each element of a civil conspiracy claim, not just the element incorporating fraud, the Amended Complaint here is sufficiently particular. The Tenth Circuit has instructed that the court is to "ask whether the complaint, taken as a whole, 'sufficiently apprise[s]' the defendant of its involvement in the alleged fraudulent conduct."[87]

That standard is met with regard to Ms. Quezada's alleged involvement with the conspiracy. The Amended Complaint alleges that Mr. Quezada transferred the Zamora's money to HQC, and that Ms. Quezada used the funds for personal gain.[88] It alleges on information and belief that Mr. and Ms. Quezada had an agreement under which Mr. Quezada would obtain money from the Zamoras through misrepresentations.[89] Next, it alleges that Ms. Quezada knew that Mr. Quezada had misrepresented facts to the Zamoras, knew that the money obtained from the Zamoras was for the sole purpose of an investment in Aurora, knew that Mr. Quezada had deposited the Zamoras' money in HQC, and knew that the money in HQC was not rightfully hers.[90] While these allegations are somewhat generalized, Rule 9(b) expressly permits allegations of knowledge and intent to be alleged generally.[91]

Accordingly, Defendants' argument is without merit.

---

[86] *E.g.*, *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067–68 (11th Cir. 2007); *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007); *Catillo v. First City Bancorp. of Tex., Inc.*, 43 F.3d 953, 961 (5th Cir. 1994); *Hayduk v. Lanna*, 775 F.2d 441, 443–44 (1st Cir. 1985). *But see, e.g.*, *Tufano v. One Toms Point Lane Corp.*, 64 F.Supp.2d 119, 131 (E.D.N.Y. 1999) ("Rule 9(b) is not applicable to civil conspiracy claims, even conspiracy to defraud.").
[87] *Clinton*, 63 F.4th at 1280 (alteration in original) (quoting *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016)).
[88] Am. Compl. ¶ 21.
[89] *Id.* ¶ 67.
[90] *Id.* ¶¶ 52, 61, 67.
[91] Fed. R. Civ. P. 9(b).

## ORDER

For the forgoing reasons, the court DENIES Defendants' motion to dismiss.[92]

Signed July 25, 2024.

BY THE COURT

_____

David Barlow
United States District Judge

---

[92] ECF No. 41.